FILED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

00 JAN 26 PM 2: 45

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| DEWEY R. WHITE, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | CV 99-PT-1431-E |
| DEPARTMENT OF THE ARMY, and LOUIS CALDERA, JR., SECRETARY OF ARMY, | ) ) ) ) | |
| Defendants. | ) | |

ENTERED

JAN 2 6 2000

## MEMORANDUM OPINION

This cause comes to be heard on Defendant Department of the Army and Louis Caldera, Jr., Secretary of the Army ("defendant" or "Army") renewed motion for summary judgment, filed December 7, 1999.

## BACKGROUND

Plaintiff Dewey H. White ("plaintiff" or "White") is a white male employee of the Army with more than 20 years of service. From January, 1994, until March, 1996, Plaintiff served in the temporary position of Quality Assurance Specialist. He currently holds the permanent position of Heavy Mobile Equipment Mechanic Leader.

Effective July, 1998, Brenda Steet, a white female employee of the Army, received a promotion to a GS-1910-09, Quality Assurance Specialist position. Her promotion was the result of a settlement of Ms. Steet's discrimination complaint against the Army which was filed with the Equal Employment Opportunity ("EEO") Office in November, 1997. Ms. Steet claimed that

1

27

she had applied for one of five Wage Grade 10 Tracked Vehicle Fielding Team positions, was qualified but not selected, and that five males were selected instead. The settlement between the Army and Ms. Steet was negotiated with the help of an investigator from the Department of Defense Office of Complaint Investigations ("OCI"). The Army's stated interest in coming to an agreement with Ms. Steet was to promote the goals and purposes of the Army's EEO Program. The position to which Ms. Steet was promoted was a vacancy, but was not posted, and neither the plaintiff nor any other employee was afforded an opportunity to apply for the position.

Sometime between July and September, 1998, plaintiff learned of the settlement agreement and Ms. Steet's promotion. Plaintiff contacted an EEO counselor and filed a formal complaint of sex discrimination based upon the filling of a position by a woman and by his lack of opportunity to apply for the position. On December 10, 1998, the Army dismissed the complaint for failure to state a justiciable claim. Plaintiff appealed the Army's decision to the EEO Commission, Office of Federal Operations ("OFO"). Prior to the end of the prescribed 180-day period allotted to EEOC OFO to review the case, plaintiff filed this action. Plaintiff has subsequently received his "Right to Sue" letter. Defendant does not assert failure to exhaust administrative remedies as a basis for the denial of plaintiff's present claim of gender discrimination.[1]

In his complaint, plaintiff alleges that he was the victim of sex discrimination in violation

---

[1] However, the defendant does dispute an implied new claim of plaintiff's, made following initial discovery, that plaintiff was discriminated against by not receiving a settlement as a result of his claim which would lead to a promotion. Defendant asserts failure to exhaust administrative remedies there.

2

of 42 U.S.C. §§ 2000e *et. seq.* (Title VII)[2] by the filling of a position by a woman and by his lack of opportunity to apply for the position. Defendant responds that plaintiff fails to state a claim on which relief can be granted and has filed a motion to dismiss, or in the alterative, for summary judgment.

Plaintiff filed a response to defendant's motion for summary judgment on September 16, 1999, in conjunction with an affidavit in support of a temporary reprieve from summary judgment in order to permit initial discovery. In this affidavit, plaintiff argued that discovery was needed to ascertain whether the Army's EEO Program is justified, whether other "settlements" accumulate to provide a basis for a disparate impact claim, whether Ms. Steet's claim would have succeeded on the merits, and what the defendant's normal procedures are when it awards employees promotions.

On September 24, 1999, this court held a teleconference with all attorneys to discuss the need for discovery. The court gave the plaintiff an additional sixty days within which to conduct discovery for the purpose of establishing whether the Anniston Army Depot's EEO Program and its settlement of EEO complaints form a valid basis for his complaint. The discovery revealed the following pertinent information. During 1994-1999, defendant settled three gender discrimination complaints with women by providing them with promotions, but did not settle the gender discrimination complaints of six other women. During the same period, defendant settled one gender discrimination complaint with a male, but did not settle the gender discrimination

---

[2]Section 2000e-2(a)(1) states that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

complaints of seven other men. Mr. Clarence Varner, the installation Equal Employment Officer, stated in his deposition that in each case of settled complaints of women, the OCI investigator indicated, prior to making his findings, that he was likely to render a finding of discrimination. The five males selected over Ms. Steet for promotion were rated better qualified for the position sought than was Ms. Steet. Ms. Steet stated in her deposition that she generally knew that the five men chosen over her were probably qualified for the position, but that she complained because she wasn't given the same opportunity to apply or interview for the position as the men, and that she believed favoritism played a role in one man's promotion.

## DISCUSSION

### A. Standard of Review

Summary judgment may be granted based upon facts developed during the administrative proceedings, the pleadings, discovery, and supplemental affidavits if together, they show that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. Id. The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. Id. at 324. The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 609 (11th Cir. 1987).

### B. Disparate Treatment

In "reverse discrimination" cases, the Eleventh Circuit applies the burden of proof

4

analysis as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Shealy v. City of Albany, 89 F.3d 804, 805 (11th Cir. 1996).[3] Under McDonnell Douglas, to prove discriminatory treatment through circumstantial evidence: (1) the plaintiff must first make out a prima facie case of discrimination; (2) the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse employment action; and (3) the burden then shifts back to the plaintiff to show that the reasons offered by the defendant are pretextual for discrimination. 411 U.S. at 802-804.

**1. Plaintiff's Prima Facie Case**

To establish a prima facie case of sex discrimination, the plaintiff must show: (1) he belongs to a protected category; (2) he was subject to an adverse employment action; (3) the defendant treated similarly situated employees outside plaintiff's classification more favorably; and (4) plaintiff was qualified to do the job. McDonnell Douglas, 411 U.S. at 801.

First, sex is a protected category and males may file discrimination claims. See Shealy, 89 F.3d at 805 (a "class" need not be a "protected" class). Thus, plaintiff satisfies the first criteria for making out a prima facie case of intentional discrimination.

Second, plaintiff must show that he was subject to an adverse employment action. McDonnell Douglas, 411 U.S. at 801. Plaintiff argues that the "adverse employment action" to which he was subjected was his lack of opportunity to apply for a position which he asserts he

---

[3] Several courts require a slightly higher burden to prove reverse discrimination because it is "that unusual employer that discriminates against the majority." See, e.g., Iadimarco v. Runyan, 190 F.3d 151, 158 (3rd Cir. 1999); Duffy v. Wolle, 123 F.3d 1026, 1036-37 (8th Cir. 1997); Reynolds v. School Dist. No. 1, Denver, Colo., 69 F.3d 1523, 1535 (10th Cir. 1995); Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 801 (6th Cir. 1994).

5

was qualified for, but to which Ms. Steet was promoted as a result of a settlement agreement. Defendant contends that plaintiff suffered no adverse employment action. It asserts that the term "personnel action," as used in § 717 of the Civil Rights Act of 1964,[4] encompasses "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." Page v. Bolger, 645 F.2d 227, 233 (4th Cir.) (en banc), cert. denied, 454 U.S. 892 (1981). Defendant argues that plaintiff actually suffered no personnel action whatsoever. Rather, the settlement agreement and subsequent promotion of Ms. Steet were actions taken utterly independent of any consideration of plaintiff or his class status and had no effect, positive or negative, on his job.

The Eleventh Circuit has held that, at least in regard to Title VII retaliatory claims of discrimination, "protection...extends to adverse actions which fall short of ultimate employment decisions." Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998) (non-ultimate employment decisions may include transfers of job duties, undeserved performance ratings, demotions, and disadvantageous transfers or assignments). In either case, plaintiff arguably suffered no decision, ultimate or not. He was not demoted, rejected for a promotion, transferred, given a poor performance evaluation, discharged, denied an opportunity to apply for a job to which others similarly situated were allowed to apply to, or denied a pay raise. He was not a party to the proceedings between Ms. Steet and the defendant. However, the court does not reach this issue.

Third, assuming plaintiff suffered an adverse personnel action, plaintiff must show that

---

[4] Section 717 states in pertinent part that "[a]ll personnel actions affecting [government] employees...shall be made free from discrimination..." 42 U.S.C. § 2000e-16(a).

6

defendant treated similarly situated employees outside his class more favorably than he was treated. McDonnell Douglas, 411 U.S. at 801. Plaintiff does not seem to make any specific argument or claims concerning defendant's behavior towards similarly situated employees. Defendant claims that plaintiff and Ms. Steet were not similarly situated as Ms. Steet was the beneficiary of a settlement agreement made pursuant to the Army's EEO Program. Among those employees who were not a party to the settlement agreement, defendant contends, plaintiff was treated no differently than anyone else regardless of sex, race, or any other protected category.

To compare plaintiff with minority employees, "the plaintiff must show that he and the employees are similarly situated in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). "The relevant inquiry is not whether the employees hold the same job title, but whether the employer subjected them to different employment policies." Lathem v. Department of Children & Youth Services, 172 F.3d 786, 793 (11th Cir. 1999). In this case, it appears that plaintiff has been treated similarly to other minority employees. Of those who have made EEO complaints of gender discrimination, whether male or female, some complaints were settled and others were not. There are no facts present which indicate that plaintiff was singled out and treated any differently than any other person who made a complaint to the EEO. Furthermore, among those employees who were not notified of the settlement between Ms. Steet and the Army, whether male or female, none had the opportunity to apply for the job which Ms. Steet ultimately filled. There are no facts which indicate that plaintiff was treated any differently than any other employee in this regard. There is no substantial evidence that the settlement procedures were or are applied in a discriminatory manner. Thus, plaintiff fails to satisfy this third prong of the prima facie showing.

Fourth, plaintiff must show that he was qualified for the job. Plaintiff argues that he was more qualified for the position at issue than was Ms. Steet. However, that is not the issue. The issue is simply whether plaintiff was qualified for the position, regardless of any other person's qualifications. Defendant has not argued that plaintiff is unqualified for the position. Discovery indicates that plaintiff was and is qualified for the position. Thus, this fourth prong of the prima facie showing is satisfied.

Plaintiff asserts that discriminatory intent can be inferred, not only from the prima facie elements described above, but also from disparate impact, and from the Army's alleged departure from standard procedure in handling EEO complaints, citing <u>Elston v. Talladega County Bd. of Educ.</u>, 997 F.2d 1394, 1406 (11th Cir. 1993). Defendant counters that there has been no departure from normal complaint procedures followed by it, and that the statistical evidence which can be gleaned from the initial discovery is so weak as to prohibit a finding of a prima facie case.

A plaintiff may establish a prima facie case of intentional discrimination by presenting statistical proof of a pattern of discrimination. <u>Hawkins v. Ceco Corp.</u>, 883 F.2d 977, 985 (11th Cir. 1989) ("Substantial statistical proof alone may establish a prime facie case of racial discrimination."); <u>Carmichael v. Birmingham Saw Works</u>, 738 F.2d 1126, 1131-1132 (11th Cir. 1984). Initial discovery has revealed that from 1994-1999, three out of nine complaints by women of sex discrimination have been settled,[5] and that one out of eight complaints by men of

---

[5] This is one third or 33.33%.

8

sex discrimination have been settled,[6] for a total of four settlements over five years. The difference between the number of women and men filing complaints and receiving settlements is not so substantial as to lead to an inference of discriminatory intent, i.e. that the Army intentionally discriminated against the plaintiff because he is a male. Furthermore, plaintiff has offered no comparative evidence regarding the relevant work pool in question to assist this court in assessing the relative importance of the offered statistics. See id. Thus, the numbers do not establish or imply discriminatory intent on the part of the defendant.

Discriminatory intent may also be circumstantially established by evidence that the decision-maker departed from the procedural norms generally followed. See Elston, 997 F.2d at 1406. Plaintiff contends that fact finding in each discrimination claim filed with the EEOC is required, and that the lack of any formal findings of fact indicates a departure from regulation, therefore indicative of discriminatory intent. See 29 C.F.R. §1614.501(c).[7] In this case, plaintiff asserts, there were no formal findings of fact, thus there was intentional discrimination. Defendant counters that findings of discrimination are not necessarily required by the regulation, quoting In re Cole, 1984 WL 47022, *1 (C.G. 1984) ("Pursuant to Title VII of the Civil Rights Act of 1964 and relevant Equal Employment Opportunity Commission regulations, Federal agencies may offer compromise settlements to employees pursuing employment discrimination

---

[6] This is one eighth or 12.5%.

[7] 29 C.F.R. 1614.501(c) states in pertinent part:
When an agency, or the commission, finds that an employee of the agency was discriminated against, the agency shall provide relief, which shall include, but need not be limited to one or more of the following actions:
(1) Nondiscriminatory placement...

9

claims, even without findings of discrimination. 42 U.S.C. § 2000e-16 (1982); 29 C.F.R. § 1613.221(c) (1983); 62 Comp. Gen. 239 (1983)."). Defendant also notes that the OCI investigator indicated his inclination to find discrimination as claimed by at least two of the three women with whom the Army settled and subsequently promoted, prompting the settlements. This court agrees with the defendant. There is no evidence to indicate that the plaintiff was treated to a different discrimination claim procedure than were any other claimants, male or female.

In sum, plaintiff has not made out a prima facie case of intentional sex discrimination. Therefore, defendant's motion for summary judgment could be granted on this basis alone. However, the court will assume that plaintiff has made out a prima facie case.

### 2. Defendant's Proffered Reason

Once a plaintiff has established a prima facie case raising an inference of intentional discrimination, the defendant then bears the "exceedingly light" intermediate burden of producing legitimate, non-discriminatory reasons for its employment action. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997). Defendant argues that, assuming plaintiff succeeds in making out a prima facie case, it is entitled to summary judgment because it has offered a legitimate, non-discriminatory reason for its decision. Defendant contends that it entered into a negotiated settlement agreement with Ms. Steet following Ms. Steet's allegations of discrimination against the Army in order to promote its EEO Program. As a result, the Army promoted Ms. Steet to the position of Quality Assurance Specialist. Defendant contends that its settlement with and subsequent promotion of Ms. Steet had absolutely nothing to do with plaintiff or plaintiff's sex. Furthermore, defendant

relies on the strong public policy favoring settlement of discrimination complaints, citing Brown v. GSA, 425 U.S. 820, 832 (1976); Grier v. Secretary of Army, 799 F.2d 721, 724 (11th Cir. 1986). This fulfills defendant's burden.

### 3. Pretext

Plaintiff next has the burden of showing that defendant's proffered reason is a mere pretext for discrimination. Burdine, 450 U.S. at 256. Plaintiff contends that his non-inclusion as a third party in the negotiated settlement agreement between the Army and Ms. Steet is evidence of pretext. Relying on Birmingham Reverse Discrimination Employment Litigation, 833 F.2d 1492, 1498 (11th Cir. 1987), plaintiff argues that the settlement reached between the Army and Ms. Steet was a consent decree which demands that the rights of third parties must be represented. See id.[8] Plaintiff further claims that because the settlement agreement was taken to promote the Army's Equal Employment Opportunity Program, defendant must put on proof to justify its gender conscience employment decision. Plaintiff appears to argue that defendant's alleged discriminatory animus is evidenced by the Army's adoption of an EEO Program.[9]

---

[8] In Birmingham, an affirmative action plan adopted by the City intending to remedy discrimination against blacks was challenged by non-black city employees. The plan aimed to remedy discrimination against blacks through an extensive remedial scheme which included both long- and short-term goals for the hiring of blacks as firefighters and the promoting of blacks to the position of fire lieutenant. Id. at 1494. However, after protracted litigation, the Eleventh Circuit found that the plan unnecessarily trammeled the rights of non-black employees, violating Title VII. Birmingham Reverse Discrimination Employment Litigation, 20 F.3d 1525, 1541-43 (11th Cir. 1994) (non-black employees excluded from consideration for half of all promotion opportunities uncalled for except when to combat a state's continuing refusal to develop non-discriminatory procedures).

[9] Only one court has held that an EEO Program had gone sufficiently awry to support a finding of reverse discrimination. Machakos v. Meese, 647 F. Supp. 1253 (D.C. 1986) (where plaintiff was qualified, but passed over repeated times over the course of years for promotions,

11

Defendant responds that plaintiff takes <u>Birmingham</u> out of context. Defendant contends that the EEO Program at issue in this case is not an affirmative action plan, and that the consent decree at issue in <u>Birmingham</u> is easily distinguishable from the settlement agreement at issue here. Defendant argues that the settlement between the Army and Ms. Steet was not designed nor intended to impact the future rights of others on the basis of a protected class.

To establish pretext, a plaintiff may cast doubt on the employer's articulated reasons by showing (1) that the given reasons have no basis in fact; (2) that the given reasons did not actually motivate the employment decision; or (3) that the given reasons were insufficient to motivate the employment decision. <u>Burdine</u> at 256. Plaintiff has not offered substantial evidence of any of these reasons. Instead, plaintiff asserts pretext by way of statistics and departure from procedure, as previously discussed. And, as previously discussed, plaintiff's assertions are insufficient.

## C. Conclusion

Based upon the foregoing, defendant's renewed motion for summary judgment will be granted.

This 26th day of January, 2000.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

---

black candidates hired instead, and expert testimony evidencing the probable case "that there was an informal policy of promoting blacks," reverse discrimination found).

12